IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kayla Van Alstyne, a/k/a Kayla Thomas, and William Thomas, <br><br> Plaintiffs, <br><br> vs. <br><br> Dean Moesch, M.D., Teleradiology Specialists, P.L.L.C., Urgent Care Group, LLC, Genevieve Jones, M.D., and Wendy Griffith, PA-C, <br><br> Defendants. | C.A. No. 2:25-cv-06715-RMG <br><br> **COMPLAINT** <br> **(Jury Trial Demanded)** |

COME NOW Plaintiffs, Kayla Van Alstyne, a/k/a Kayla Thomas ("Plaintiff Van Alstyne"), and William Thomas ("Plaintiff Thomas") (collectively, "Plaintiffs") complaining of Defendants Dean Moesch, M.D., Teleradiology Specialists, P.L.L.C., Urgent Care Group, LLC, Genevieve Jones, M.D., Wendy Griffith, PA-C, and would allege and show this Court as follows:

## PARTIES

1. Plaintiffs are citizens and residents of the State of Illinois. Plaintiffs are legally married and were so at all times relevant hereto.

2. Upon information and belief, Defendant Dean Moesch, M.D. ("Dr. Moesch") is a citizen and resident of the State of Georgia, and he is or was at all relevant times licensed to practice medicine in the State of South Carolina. Plaintiff is further informed and believes Dr. Moesch is or was during the relevant time period an employee, agent, and/or servant of Defendant Teleradiology Specialists, P.L.L.C.

1

3.     Upon information and belief, Defendant Teleradiology Specialists, P.L.L.C. ("Defendant TS") is a business entity organized and existing under the laws of the State of Arizona and transacts business within the State of South Carolina, including in Charleston County.

4.     Upon information and belief, Defendant Urgent Care Group, LLC ("Defendant Urgent Care") is a for-profit limited liability company organized and existing under the laws of the State of Delaware and is a health care provider within the meaning of S.C. Code Ann. § 15-79-110 and is authorized to transact business within the State of South Carolina, including in Charleston County.

5.     Plaintiffs are informed and believe that Defendant Urgent Care owns and/or operates the MEDCare Urgent Care–West Ashley–Sam Rittenberg location ("MEDCare Sam Rittenberg") as a for-profit enterprise and did so at all times relevant hereto.

6.     Upon information and belief, Defendant Genevieve Jones, M.D. ("Dr. Jones") is a physician licensed to practice medicine in the State of South Carolina and is a resident of the State of South Carolina. Plaintiffs are further informed and believe that this Defendant is or was during the relevant time period an employee, agent, and/or servant of Defendant Urgent Care.

7.     Upon information and belief, Defendant Wendy Griffith, PA-C ("PA-C Griffith") is a certified physician assistant licensed to practice in the State of South Carolina and is a resident of the State of South Carolina. Plaintiffs are further informed and believe that this Defendant is or was during the relevant time period an employee, agent, and/or servant of Defendant Urgent Care.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the parties hereto and the matters alleged herein pursuant to 28 U.S.C. § 1332(a), as diversity of citizenship exists and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9. Venue is proper in this Division because a substantial part of the tortious acts and/or omissions giving rise to this action occurred in Charleston County, South Carolina.

## FACTS

10. On October 17, 2022, Plaintiff Van Alstyne presented to the MEDCare Sam Rittenberg location with complaints of an acute injury to her right ankle and right foot.

11. Dr. Jones and PA-C Griffith attended to and treated Plaintiff during her visit.

12. A clinical examination of Plaintiff's right foot and ankle revealed pain, swelling, and limited range of motion.

13. Upon information and belief, PA-C Griffith, while under the supervision of Dr. Jones, ordered X-rays of Plaintiff's right foot and right ankle for further evaluation and treatment.

14. Three views of Plaintiff's right foot and right ankle were obtained.

15. Dr. Moesch, who was at all relevant times acting within the course and scope of his employment with Defendant TS, participated in Plaintiff's course of treatment by initially interpreting the results of Plaintiff's imaging studies, and in particular, the X-Ray images of Plaintiff's right foot.

16. As a result of his review of Plaintiff's right foot imaging, Dr. Moesch issued a radiology report on October 17, 2022, at 4:51:31 p.m. CDT, in which he stated that there was "[n]o evidence for fracture or other acute abnormality" in Plaintiff's right foot.

17. Upon information and belief, and as set forth in the affidavit of Douglas W. Gibson, M.D. attached hereto as Exhibit A, the October 17, 2022 imaging of Plaintiff's right foot contained strong radiographic evidence suggestive of a Lisfranc fracture and ligamentous injury between the first and second metatarsals, as well as the medial and intermediate cuneiforms, in Plaintiff's right foot.

18. Dr. Moesch failed to identify the aforementioned radiographic evidence suggestive of a LisFranc fracture and ligamentous injury that was present in the October 17, 2022 imaging of Plaintiff's right foot.

19. Further, Plaintiffs are informed and believe that Dr. Jones and PA-C Griffith either never reviewed the actual X-ray images of Plaintiff's right foot, or did review said imaging and also failed to identify the above-referenced radiographic evidence of injury to Plaintiff's right foot.

20. Upon information and belief, and as more specifically set forth in Paragraph 13 of Exhibit A, a proper review of Plaintiff's October 17, 2022 right foot imaging results, in conjunction with Plaintiff's clinical presentation at the time of her urgent care visit, would have raised suspicion of a possible LisFranc and ligamentous injury and would most likely have led to the timely diagnosis, appropriate treatment, and improved prognosis of the right foot injuries Plaintiff suffered on October 17, 2022.

21. Pursuant to S.C. Code Ann. § 15-36-100, the Affidavit of Douglas W. Gibson, M.D., which identifies at least one negligent act or omission by the Defendants, is attached as Exhibit A and incorporated by reference.

22. As a direct and proximate result of Defendants' failures to adhere to the standard of care and skill generally exercised by medical providers under similar circumstances, Plaintiff suffered a substantial delay in the diagnosis and treatment of her Lisfranc and ligamentous injury, a reduced/poor prognosis for full recovery, likely permanent deformity of her right foot, as well as significant injuries, medical expenses, and other unnecessary damages.

23. Further, as a direct and proximate result of Defendants' failures to adhere to the standard of care and skill generally exercised by medical providers under similar circumstances, Plaintiff Thomas has suffered damages, including a loss of consortium.

## FOR A FIRST CAUSE OF ACTION
### (Professional Negligence/Medical Malpractice as to all Defendants)

24. The foregoing allegations are realleged and reincorporated as if more fully set forth herein verbatim to the extent not inconsistent herewith.

25. At all times relevant hereto, Dr. Moesch was an employee, agent, and/or servant of Defendant TS and was acting within the course and scope of his employment and/or agency as a physician responsible for certain aspects of Plaintiff's medical care, including the initial interpretation of Plaintiff's diagnostic imaging. Defendant TS is, therefore, vicariously liable for the negligent acts and omissions of Dr. Moesch under the doctrine of *respondeat superior*.

26. At all times relevant hereto, Dr. Jones and PA-C Griffith were employees, agents, and/or servants of Defendant Urgent Care, and were acting within the course and scope of their employment and/or agency as health care providers delivering care to Plaintiff. Defendant Urgent Care is therefore vicariously liable for the negligent acts and omissions of Dr. Jones and PA-C Griffith under the doctrine of *respondeat superior*.

27. Defendants owed a duty to render proper medical care and treatment to Plaintiff in accordance with the applicable standard of care exercised by similarly situated medical providers under the same or similar circumstances.

28. Defendant Urgent Care owed a nondelegable duty to ensure Plaintiff received competent medical treatment at the MEDCare Sam Rittenberg location on October 17, 2022.

29. Defendants, individually or through their employees and/or agents, breached the applicable standard of care in the following particulars:

   a. In failing to recognize and identify the radiographic evidence suggestive of a Lisfranc fracture and ligamentous injury present in Plaintiff's October 17, 2022 right foot imaging;

      b.    In failing to order or perform additional diagnostic imaging studies of Plaintiff's right foot for further evaluation of Plaintiff's condition, in light of her clinical presentation;

      c.    In failing to properly diagnose Plaintiff's Lisfranc injury and ligamentous injury in her right foot as stated hereinabove;

      d.    In breaching the applicable standard of care as further described in the Affidavit of Douglas W. Gibson, M.D. attached as Exhibit A; and

      e.    In such other and further particulars as the evidence at trial may show.

30.    As a direct and proximate result of the separate and independent negligent, grossly negligent, and/or reckless acts or omissions of Defendants as described herein, Plaintiff suffered a substantial delay in the diagnosis and treatment of her condition, was injured, and has endured and continues to endure severe and unnecessary physical pain, suffering, mental and emotional distress, and has suffered damages, including but not necessarily limited to, actual damages, consequential damages, past and future medical expenses, wage loss, loss of enjoyment of life, and such other damages as the evidence at trial may show.

31.    Further, upon information and belief, as a direct and proximate result of the negligent, grossly negligent, and/or reckless acts or omissions of Defendants described above, Plaintiff has suffered permanent injury to her right foot for which she is reasonably certain to require ongoing, future medical treatment, the total estimated cost of which is expected to exceed $200,000.00.

32.    Plaintiff is informed and believes that Defendants' actions and omissions were willful, wanton, or carried out with such reckless disregard for and conscious indifference to Plaintiff's rights that Plaintiff is entitled to recover punitive damages in addition to actual damages.

**FOR A SECOND CAUSE OF ACTION**
(General Negligence as to Defendant Urgent Care and Dr. Jones)

33. The foregoing allegations are realleged and reincorporated as if more fully set forth herein verbatim to the extent not inconsistent herewith.

34. Plaintiffs' Second Cause of Action asserts ordinary negligence claims grounded in general tort principles and non-medical malpractice standards.

35. "[N]ot every action taken by a medical professional in a hospital or doctor's office necessarily implicates medical malpractice and, consequently, the requirements of [S.C. Code Ann.] Section 15-79-125." *Dawkins v. Union Hosp. Dist.*, 408 S.C. 171, 178, 758 S.E.2d 501, 504 (2014).

36. "However, at all times, the medical professional must 'exercise ordinary and reasonable care to ensure that no unnecessary harm [befalls] the patient.'" *Id*. at 178, 758 S.E.2d at 504 (further citations omitted).

37. "The statutory definition of medical malpractice found in section 15-79-110(6) does not impact medical providers' ordinary obligation to reasonably care for patients with respect to nonmedical, administrative, ministerial, or routine care." *Id.*

38. "[N]ot every injury sustained by a patient in a hospital results from medical malpractice." *Id.* at 177, 758 S.E.2d at 504.

39. Upon information and belief, Defendant Urgent Care has the right and power to direct and control the manner in which its employees and/or agents provide care and operate the business of delivering routine, ministerial and/or non-medical care.

40. Upon information and belief, Dr. Jones has the right and power to supervise, direct, and control the manner in which physician assistants, nurses, and other non-physician staff of

7

Defendant Urgent Care provide care and operate the business of delivering routine, ministerial, and/or non-medical care.

41. Upon information and belief, Defendants have a non-delegable duty to ensure that physicians, physician assistants, nurses, and other staff are adequately trained and able to provide any routine and/or non-medical care to patients.

42. Defendants and their physicians, physician assistants, nurses, agents, and/or employees undertook the duty to render routine ministerial care to Plaintiff in accordance with the applicable prevailing professional standards.

43. Upon information and belief, notwithstanding said undertaking, and while Plaintiff was under the care of Defendants and their physicians, physician assistants, agents, and/or employees, said Defendants and their physicians, physician assistants, agents, and/or employees departed from prevailing and acceptable standards of administrative, routine, ministerial, or non-medical care and treatment and were thereby negligent, careless, grossly negligent, reckless, and in violation of the duties owed to Plaintiff and are therefore liable for one or more of the following acts or omissions:

   a. In failing to review and follow up on imaging studies identifying a possible LisFranc dislocation and ligamentous injury in Plaintiff's right foot;

   b. In failing to appropriately supervise non-physician staff, employees, and/or agents participating in Plaintiff's medical care;

   c. In failing to communicate necessary information to Plaintiff;

   d. In failing to render proper routine, ministerial, administrative, and/or non-medical care to Plaintiff;

   e. In failing to train their physicians, physician assistants, nurses, employees, and/or agents in an appropriate manner;

    f. In continuing to employ certain employees when Defendants knew or should have known that doing so would result in harm to a patient; and

    g. In such other and further particulars as may be ascertained through discovery.

44. As a direct and proximate result of the negligent, grossly negligent, and/or reckless acts or omissions of Defendants described above, Plaintiff suffered a substantial delay in the diagnosis and treatment of her condition, was injured, and has endured and continues to endure severe and unnecessary physical pain, suffering, mental and emotional distress, and has suffered damages, including but not necessarily limited to, actual damages, consequential damages, medical expenses, wage loss, loss of enjoyment of life, and such other damages as the evidence at trial may show.

45. Further, upon information and belief, as a direct and proximate result of the negligent, grossly negligent, and/or reckless acts or omissions of Defendants described above, Plaintiff has suffered permanent injury to her right foot for which she is reasonably certain to require ongoing, future medical treatment, the total estimated cost of which is expected to exceed $200,000.00.

46. Plaintiff is informed and believes that Defendants' actions and omissions were willful, wanton, or carried out with such reckless disregard for and conscious indifference to Plaintiff's rights that Plaintiff is entitled to recover punitive damages in addition to actual damages.

**FOR A THIRD CAUSE OF ACTION**
**(Loss of Consortium as to all Defendants)**

47. The foregoing allegations are realleged and reincorporated as if more fully set forth herein verbatim to the extent not inconsistent herewith.

48. Plaintiff William Thomas was at all times relevant hereto legally married to Plaintiff Kayla Van Alstyne, a/k/a Kayla Thomas.

49. Prior to the matters complained of herein, Mr. Thomas relied upon Mrs. Thomas for certain domestic services, including but not limited to, household assistance, companionship, affection, and society.

50. Plaintiff Kayla Van Alstyne, a/k/a Kayla Thomas's injuries and damages set forth herein were caused by the negligent, willful, wanton, and reckless acts and/or omissions of Defendants, as hereinabove set forth, and have impaired her ability to provide the above-referenced services to her husband in the manner to which he is accustomed.

51. Plaintiff William Thomas was damaged individually as a result of the injuries and damages suffered by his wife, including but not limited to, the loss of domestic services, as well as the loss of society, comfort, and companionship.

52. As a direct and proximate result of the negligent, grossly negligent, willful, wanton, and reckless acts and/or omissions of Defendants, jointly and severally, Plaintiff William Thomas is entitled to recover actual and punitive damages in an amount to be determined by the jury.

WHEREFORE, having fully set forth their Complaint, Plaintiffs pray this Court for a jury trial on all issues so triable and for judgment against Defendants for:

A. Actual, consequential, and incidental damages, both past and future;
B. Punitive damages;
C. Prejudgment interest;
D. Costs and attorney's fees in instituting this action; and
E. For such other and further legal and equitable relief as this Court may deem just and proper.

[Signature Page Follows]

Respectfully submitted,

                        O'REILLY LAW FIRM, LLC

                        *s/Michael C. Masciale*
                        Michael C. Masciale, Esq.
                        Fed. Bar No. 12944
                        215 East Bay St., Ste. 400
                        Charleston, SC 29401
                        Phone: 843-790-8771
                        *Mike@poreillylaw.com*
                        ***Attorney for Plaintiffs***

July 2, 2025
Charleston, South Carolina